# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| AMIE L. MORRISETTE, | : | |
| Plaintiff, | : | |
| vs. | : | CA 17-0306-MU |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>performing the duties and functions not<br>reserved to the Commissioner of<br>Social Security,[1] | :<br><br>:<br><br>: | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21 & 23 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the parties'

---

[1] *See* https://www.ssa.gov/agency/commissioner.html (last visited, April 17, 2018, 8:53 a.m.)

arguments at the May 9, 2018 hearing before the undersigned, it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

## I. Procedural Background

Plaintiff filed an application for supplemental security income benefits on February 7, 2014, alleging disability beginning on January 1, 1994. (*See* Tr. 229-41.) Morrisette's claim was initially denied on May 23 or 27, 2014 (*compare* Tr. 81 *with* Tr. 97-100) and, following Plaintiff's May 28, 2014 written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 101-03), an initial hearing was conducted before an ALJ on November 19, 2015 (*see* Tr. 59), followed by a second hearing on March 10, 2016 (Tr. 46) and a third and final hearing on June 8, 2016 (Tr. 35-45). On July 6, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to supplemental security income benefits. (Tr. 20-29.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Morrisette retains the residual functional capacity to perform those medium, unskilled jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 28 *with* Tr. 41-43). On July 27, 2016, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 226); the Appeals Council denied Morrisette's request for review on June 1, 2017 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21 & 23 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

Plaintiff alleges disability due to diabetes, hypertension, seizure disorder, obesity, major depressive disorder, PTSD, somatic syndrome disorder, and depression due to another medical condition. The Administrative Law Judge (ALJ) made the following relevant findings:

> **2. The claimant has the following severe impairments: hypertension, diabetes mellitus, seizure disorder, obesity, major depressive disorder, post-traumatic stress disorder (PTSD), somatic symptom disorder, and depression due to another medical condition (20 CFR 416.920(c)).**
>
> . . .
>
> **3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 416.967(c) except she should avoid all exposure to dangerous machinery and unprotected heights. She cannot climb ladders, ropes or scaffolds and she cannot crawl. She can occasionally kneel and crouch. She can understand, remember and carry out short and simple instructions on an unlimited basis. She cannot understand, remember and carry out detailed instructions. She can occasionally interact/associate with the general public, coworkers, and supervisors. While the claimant has more than a slight limitation in the ability to respond appropriately to usual work situations and to changes in a routine work setting, she can do so at a satisfactory level.**
>
> . . .
>
> **5. The claimant has no past relevant work (20 CFR 416.965).**
>
> . . .

**6. The claimant was born on April 18, 1966, and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).**

**7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**

**9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**

. . .

**10. The claimant has not been under a disability, as defined in the Social Security Act, since February 7, 2014, the date the application was filed (20 CFR 416.920(g)).**

(Tr. 22, 24, 28 & 29 (emphasis in original)).

## II. Standard of Review and Claim on Appeal

A claimant is entitled to an award of supplemental security income benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a) (2017). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities (that is, a severe impairment), she is not disabled. 20

C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental impairments prevent her from performing any past relevant work. 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[3] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform,

---

[3] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

the claimant must prove she is unable to perform those jobs in order to be found disabled.'"). [4]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those medium, unskilled jobs identified by the VE during the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[5] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Morrisette asserts one reason the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence),

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[5] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

namely, that the ALJ's RFC determination is not supported by substantial evidence because the hearing officer cherry-picked evidence to support his determination while improperly dismissing opinions that supported a finding of disability. (*See* Doc. 15, at 1-6). During oral arguments on May 9, 2018, Plaintiff's counsel explicated that the ALJ's choice to give little weight to the opinion of Dr. Kendra LaConsay, and substantial weight to the opinion of Dr. John Davis, was improper because he cherry-picked some of the evidence and did not discuss evidence that supported Dr. LaConsay's opinion.

When making a determination regarding a claimant's RFC, RFC being "'an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments[,]'" *Forrester v. Commissioner of Social Security,* 455 Fed.Appx. 899, 901 (11th Cir. Jan. 10, 2012), quoting *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997), an ALJ obviously need weigh the opinion evidence of record, *see Forrester, supra,* 455 Fed.Appx. at 901-02. Indeed, "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Sec. Admin.,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). In assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Sec.,* 686 Fed.Appx. 731, 732

(11th Cir. Apr. 24, 2017) (citing *Winschel v. Commissioner of Social Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Sec.,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."); *compare id. with Nyberg v. Commissioner of Social Sec.,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'"). Finally, "the more consistent a physician's opinion is with the record as a whole, the more weight the ALJ should place on that opinion[,]" *Flowers v. Commissioner of Social Security,* 441 Fed.Appx. 735, 740 (11th Cir. Sept. 30, 2011), and, as a result, an ALJ obviously may "reject the opinion of any physician if the evidence supports a contrary conclusion." *Adams v. Commissioner, Social Security Admin.,* 586 Fed.Appx. 531, 533 (11th Cir. Oct. 2, 2014), citing *Sryock v. Heckler,* 764 F.2d 834, 835 (11th Cir. 1985).

The ALJ clearly stated in the administrative decision that he was affording substantial weight to the opinion and observations of Dr. Davis that Plaintiff's mental condition is not disabling. In support of this decision, the ALJ noted how Dr. Davis concluded Plaintiff's mental condition produces only mild to moderate limitations of function, and how the consultative examiner's opinion and observations are consistent with the medical evidence of record, specifically that evidence reflecting that Plaintiff's symptoms only worsen upon noncompliance with medication. The ALJ also cited Plaintiff's activities of daily living. (Tr. 27.) In addition, the ALJ made clear that he was

8

affording "little weight" to Dr. LaConsay's May 2016 opinion "showing extreme and marked limitations[,]" for the following reasons:

> This is inconsistent with the record as a whole showing only mild to moderate limitations and contradicted by the opinion of Dr. Davis whose opinion is given significant weight. Furthermore, as noted in the record, there have been multiple observations of no mental problems throughout the record. This is a conclusory form with no evidence of four or more decompensations with no evidence to suggest this same level of limitation since 2006. In addition, it is emphasized that the claimant underwent the examination not in an attempt to seek treatment for symptoms.

(Tr. 27.)[6]

The undersigned finds the ALJ committed no reversible error with respect to his consideration of the opinions of Anderson's consulting psychologists. In particular, the Court finds that the ALJ's decision to give substantial weight to Dr. Davis' mild and moderate limitations of mental functioning is supported by substantial evidence, given the other evidence in the record underscoring that Plaintiff at times exhibited no psychological abnormalities (*see, e.g.,* Tr. 336 & 339 (psychiatric exams on January 17 & 21, 2014 were normal; Morrisette was oriented to time, person, place and situation, and her mood and affect were appropriate, with normal insight and judgment); Tr. 356

---

[6] To the extent that this last statement by the ALJ is a reference to his earlier comments about Plaintiff being referred to Dr. LaConsay by her attorney, who apparently paid for the report (*compare id. with* Tr. 26 ("It is emphasized that the claimant underwent the [May 2016] examination not in an attempt to seek treatment for symptoms, but rather through attorney referral in an effort to generate evidence for the hearing. Further, Dr. LaConsay was presumably paid for the report . . . [and] the context in which it was produced cannot be entirely ignored.")), the undersigned tends to agree with Plaintiff that the ALJ should not have made these unwarranted observations; however, any error by the ALJ in this regard was harmless given that the ALJ did give Dr. LaConsay's mental RFC assessment due consideration (*see* Tr. 27) and rejected it for proper reasons supported by the evidence, namely because the limitations reflected thereon were inconsistent with the record as a whole and the form was conclusory "with no evidence of four or more decompensations [and] no evidence to suggest this same level of limitation since 2006[]" (*id.*). *See, e.g., Adams, supra,* 586 Fed.Appx. at 533 (recognizing that an ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion).

(August 8, 2014 medical notation that Plaintiff had no depression); Tr. 366, 370 & 387 (reviews of psychiatric system, on May 19, 2015 and June 24 & 26, 2015 office visits, were normal, with specific notations that Plaintiff was oriented to time, person, place and situation, and her mood and affect were appropriate)[7]; Tr. 399, 404 & 407 (August 31, 2016 and September 18 & 21, 2015 clinical notations of no depression); Tr. 439 & 447 (on May 5, 2015 and July 14, 2015 visits to the University of South Alabama Hospital's emergency room, Plaintiff was noted to be cooperative and oriented x3); Tr. 455 (June 26, 2015 hospital notation of normal mood and affect); Tr. 468 (May 17, 2015 hospital notation of normal mood and affect, normal behavior, and normal judgment and thought content); Tr. 494 (September 14, 2015 office note reflecting no depression); Tr. 546 (February 24, 2016 clinical note which reflects that Plaintiff reported no depression); Tr. 552 (September 21, 2015 clinical notation reflecting no depression); Tr. 558 (August 27, 2015 clinical notation reflecting no depression); *compare id. with* Tr. 483-84 (mental progress note from AltaPointe dated December 17, 2015 and reflecting Plaintiff's report that her mood is much better, with only occasional depressive symptoms and anxiety, and mental status exam reflecting cooperative behavior, normal eye contact, coherent and spontaneous speech, no delusions or hallucinations, affect appropriate to situation, congruent mood, orientation x4, etc.)) or otherwise exhibited increased pathology only when non-compliant with her medications (Tr. 414 (mental health notes dated August 6, 2015 where Plaintiff reported the same symptoms she reported on intake in April 2015 because she never started the Celexa); Tr. 510 (May 2, 2016 mental progress note from

---

[7] These are not merely rote observations made by medical examiners, given that on May 12, 2015, the medical notes from Plaintiff's office visit reflect the notation that Plaintiff was feeling down and depressed. (*See* Tr. 391.)

AltaPointe reflecting Plaintiff's admission that she did not always take her psychiatric medication as prescribed but was working on compliance because of her realization that they made her feel better); Tr. 511 (April 20, 2016 mental progress note from AltaPointe reflecting Plaintiff's admission that despite increased psychiatric symptoms she was not taking the prescribed Buspirone but agreed to start taking it); Tr. 547 (February 16, 2016 note reflecting that Plaintiff admitted to stopping her medication because she thought she was healed)), evidence referencing Plaintiff's mental impairments as being mild or moderate (Tr. 419 (mental status exam on April 7, 2015 reflects a diagnosis of moderate recurrent major depressive disorder, Plaintiff being at low risk, with a GAF score of 60); Tr. 486 (February 17, 2016 progress note reflecting mild recurrent major depression, despite admission of medication non-compliance "because she feels fine and feels healed[]"); Tr. 520 (March 23, 2016 direct service record from AltaPointe reflects mild anxiety); Tr. 528 (February 1, 2016 direct service record from AltaPointe reflecting moderate symptoms); Tr. 530 & 532 (January 8, 2016 and February 1, 2016 direct service record notations from AltaPointe reflecting moderate anxiety); Tr. 548 (February 16, 2016 notation to mild recurrent major depression)), and evidence relative to Plaintiff's activities of daily living and estimation of her abilities (Tr. 277-283 (adult function report reflecting that Plaintiff watches television, reads, listens to the radio and/or talks on the phone most days; does laundry and cleans dishes; makes simple meals; uses public transportation; shops; can pay bills, count change, handle a savings account and use a checkbook; goes to church and visits her aunt; can pay attention as long as needed, finishes what she starts, follows written and spoken instructions well, gets along well with others, and does not take too long to adjust to changes in her

routine)).[8] And in light of this determination, it is clear that the ALJ did not err in giving little weight to Dr. LaConsay's "extreme/marked/constant" limitations of mental functioning as his rejection of Dr. LaConsay's mental RFC assessment is supported by substantial evidence in the form of Dr. Davis' opinion and the aforementioned evidence supportive of Dr. Davis' mild and moderate limitations of function.[9] In other words, the ALJ in this case properly accorded Dr. Davis' opinion more weight because it is more consistent with the evidence as a whole and properly accorded little weight to Dr. LaConsay's opinion since the evidence of record supports a contrary conclusion. *Compare Flowers, supra,* 441 Fed.Appx. at 740 *with Adams, supra,* 586 Fed.Appx. at 533.[10]

---

[8] (*See also* Tr. 90-91 (mental RFC assessment by Dr. Joanna Koulianos, a non-examiner, reflecting, at most, moderate limitations)). In addition to the foregoing, the undersigned also notes that on April 15, 2016, Benefit Specialists at AltaPointe specifically informed Morrisette that no AltaPointe physician would complete a Food Stamp form stating that "she is unable to work 20 hours a week." (Tr. 513.)

[9] The ALJ also correctly observed that the record does not reflect that Plaintiff has experienced 4 or more episodes of decompensation in work or work-like settings, as suggested by Dr. LaConsay (*see* Tr. 585). Indeed, the record does not reflect any decompensations in work or work-like settings (*see, e.g.,* Tr. 351 (reasons offered for leaving past work included that she fell on the job, her back went out, work ran out or the job was temporary)) and Plaintiff has never been hospitalized because of her mental impairments (*see, e.g.,* Tr. 581 (Dr. LaConsay's own evaluation notes reflect that Plaintiff has never been hospitalized for psychiatric reasons)). Additionally, there is nothing whatsoever in the record suggesting that Anderson has experienced the marked/extreme/constant limitations reflected on Dr. LaConsay's form (*see* Tr. 585-86) since 2006 (*see, e.g.,* Tr. 325-580 (records only go back as far as 2014)). These inconsistencies between Dr. LaConsay's form and the evidence of record, therefore, provide a sufficient basis upon which the ALJ could reject the limitations noted on the form. *See, e.g., Adams, supra,* 586 Fed.Appx. at 533.

[10] In reaching this determination, the undersigned rejects any contention by Plaintiff that the ALJ was specifically required to discuss each and every piece of evidence of record she claims would lend some support to Dr. LaConsay's opinion; instead, it was sufficient for the ALJ to find that the evidence as a whole did not support the degree of limitation found by Dr. LaConsay but did support the degree of limitation found by Dr. Davis, particularly where, as here, substantial evidence of record supports the ALJ's determination that Plaintiff experiences only mild to moderate limitations of function. In other words, as recognized in this opinion, (Continued)

12

Given that Plaintiff's only assignment of error is properly overruled, the ALJ's RFC determination is supported by substantial evidence,[11] and Plaintiff does not otherwise challenge the VE's identification of medium, unskilled jobs an individual with such residual functional capacity can perform (*compare* Doc. 15 *with* Tr. 28 & 41-43), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)). In short, substantial evidence supports the ALJ's determination that Anderson was not disabled.

---

because substantial evidence of record supports the ALJ's determinations to give Dr. Davis' opinion substantial weight and the opinion of Dr. LaConsay only little weight, there can be no suggestion that the ALJ engaged in improper cherry-picking of the evidence in weighing the opinion evidence of record.

[11]  In particular, the Court finds the ALJ's RFC determination (Tr. 24) supported by Dr. Davis' consultative examination and mental medical source statement (Tr. 473-81), other medical evidence of record (*see, e.g.,* Tr. 90-91, 325-29, 332-43, 350-53, 355-99, 404-07, 411-22, 439-72, 483-97 & 503-58), and evidence of record regarding Plaintiff's daily activities and mental abilities and capabilities (*see, e.g.,* Tr. 38-40 & 277-83).

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 25th day of May, 2018.

<u>s/P. BRADLEY MURRAY</u>
**UNITED STATES MAGISTRATE JUDGE**